Filed 6/30/22  In re V.M. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re V.M., a Person Coming Under the Juvenile Court Law. | B315126 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>A.M.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21CCJP00020A) |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Zeke Zeidler, Judge.  Conditionally affirmed with directions.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother appeals from the juvenile court's order terminating her parental rights to her infant child, V.M.  The only issue mother raises on appeal is that the Department of Children and Family Services (DCFS) failed to conduct an adequate initial inquiry under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state laws implementing ICWA (Welf. & Inst. Code,[1] § 224 et seq.).  We agree and conditionally affirm the order terminating mother's parental rights and remand the matter for the limited purpose of requiring DCFS to comply with ICWA.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Proceedings leading to the termination of parental rights[2]

In January 2021, about a week after V.M. was born, DCFS filed a dependency petition alleging mother had a history of substance abuse, is a current abuser of substances, and tested positive for amphetamine on the day she gave birth to V.M.  Also in January 2021, V.M. was detained from mother's custody and placed with maternal great-aunt.

_____

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Because mother challenges only the court's ICWA finding, we provide only a short summary of the facts underlying the initiation of V.M.'s dependency proceedings and the termination of mother's parental rights.

In March 2021, the juvenile court sustained the dependency petition. At the disposition hearing held in April 2021, the court removed V.M. from mother's custody and denied mother's request for reunification services. Maternal great-aunt attended the disposition hearing by phone. V.M. remained placed with her maternal great-aunt.

In August 2021, the court held a permanency planning hearing. By that time, maternal great-aunt was committed to adopting V.M. The court found V.M. was adoptable and terminated mother's parental rights. The identity of V.M.'s father was never confirmed before the court terminated mother's parental rights.

Mother appealed from the order terminating her parental rights.

### A. *ICWA Investigation*

Mother grew up in foster care. Aside from V.M.'s maternal great-aunt, mother is estranged from her biological relatives. When DCFS contacted mother in late December 2020, she denied knowing of any Indian ancestry on her side of the family.

Mother didn't attend the detention hearing held in early January 2021. At that hearing, the juvenile court found ICWA did not apply to V.M.'s case.

In March 2021, mother's counsel filed an ICWA-020 form on mother's behalf, checking the box that states "[n]one of the above apply" concerning whether V.M., mother, or any of mother's relatives are members of, or may be eligible for membership in, a federally recognized tribe. Neither mother nor her counsel signed the ICWA-020 form. Maternal great-aunt, but not mother, appeared at the jurisdiction hearing in March 2021.

3

The court didn't ask maternal great-aunt whether she knew, or had reason to know, that V.M. is, or may be, an Indian child.

Mother first appeared in this case at the April 2021 disposition hearing. Maternal great-aunt also appeared at the disposition hearing. The court didn't ask mother or maternal great-aunt whether they knew, or had reason to know, V.M. is, or may be, an Indian child.

In its August 2021 permanency planning hearing report, DCFS described some of the family history for maternal great-aunt. Maternal great-aunt was born in Tijuana, Mexico, and lived in Mexico until she was at least 17 years old. Maternal great-aunt has 11 siblings, with whom she keeps in touch on a weekly basis and all of whom still live in Mexico. According to V.M.'s birth certificate, mother was also born in Mexico. Mother attended the selection and implementation hearing but was not asked whether she knew, or had reason to know, V.M. is, or may be, an Indian child. And although maternal great-aunt did not attend this hearing, there is no indication in the record that DCFS or the juvenile court ever asked maternal great-aunt whether she knew, or had reason to know, whether V.M. is, or may be, an Indian child.

## DISCUSSION

Pursuant to ICWA, "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and their right of

intervention."[3]  (25 U.S.C. § 1912(a).)  This notice requirement, which is also codified in California law (§ 224.2), enables a tribe to determine whether a child is an Indian child and, if appropriate, to exercise jurisdiction over a child custody proceeding (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8).

During the pendency of a dependency proceeding, the juvenile court and DCFS have an affirmative and continuing duty to inquire whether a child is or may be an Indian child.  (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a).)  The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.  (§ 224.2, subd. (a).)  If DCFS takes a child into temporary custody, its inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child."  (§ 224.2, subd. (b).)[4]  The court also must make

---

[3] ICWA defines an " 'Indian child' " as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subd. (a).)

[4] ICWA defines " 'extended family member' " as any person so defined by the law or custom of the Indian child's tribe, or in the absence of such law or custom, "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2).)

an ICWA inquiry when the parents first appear in court. The court "shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)) and must require each party to complete a parental notification of Indian status form ICWA-020 (Cal. Rules of Court, rule 5.481(a)(2)(C)).

The juvenile court may find ICWA does not apply to a child's proceeding if it finds DCFS's duty of inquiry has been satisfied and there is no reason to know that child is an Indian child. (§ 224.2, subd. (i)(2); Cal. Rules of Court, rule 5.481(b)(3)(A).)

We generally review the juvenile court's ICWA findings for substantial evidence. (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.) However, "[w]here . . . there is no doubt that [DCFS]'s inquiry was erroneous, our examination as to whether substantial evidence supports the juvenile court's ICWA finding ends up turning on whether that error by [DCFS] was harmless." (*In re Dezi C.* (June 14, 2022, B317935) ___ Cal.App.5th ___ [2022 Cal.App. Lexis 514, 6–7].)

Mother contends DCFS's initial inquiry was inadequate because the agency didn't interview V.M.'s maternal great-aunt about the child's Indian ancestry. We agree. Although mother denied knowing of any Indian ancestry on her side of the family, that didn't relieve DCFS of its duty to ask V.M.'s known extended family members such as maternal great-aunt about the child's Indian ancestry. (§ 224.2, subd. (b).)

DCFS doesn't dispute that its initial inquiry was inadequate, but it contends any error in failing to ask maternal great-aunt about V.M.'s Indian ancestry was harmless because nothing in the record suggests V.M. or mother are members of, or

6

are eligible for membership in, any federally recognized tribes. Specifically, DCFS points to the fact that mother and maternal great-aunt were born in Mexico and that all maternal great-aunt's siblings still live there to assert that any additional inquiry is unlikely to reveal information suggesting V.M. has American Indian ancestry. We are not persuaded.

We refrain from making any inferences about the probability of having American Indian ancestry based on birthplace or country of residence. Here, the record reflects that DCFS made an ICWA inquiry with one person, mother. The record also tells us that mother grew up in foster care, estranged from all her biological relatives except for maternal great-aunt. Because mother may not be fully informed of her heritage, maternal great-aunt is likely the best source of information about the family's ancestry. Further, because V.M.'s father could not be determined, there was no inquiry at all as to father. Thus, we cannot conclude on this set of facts that DCFS's failure to ask maternal great-aunt whether V.M. is or may be an Indian child was harmless. (See *In re Dezi C.*, *supra*, ___ Cal.App.5th ___ [2022 Cal.App. Lexis 514, 10] [where there is no inquiry into one of the two parents' heritage at all, or where parent is not fully informed of heritage, there is reason to believe child may be Indian child, and failure to conduct proper initial inquiry not harmless].)

**DISPOSITION**

The juvenile court's order terminating mother's parental rights is conditionally affirmed. On remand, the court shall ensure that DCFS complies with the duty of initial inquiry (Welf. & Inst. Code, § 224.2, subd. (b)) and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the pertinent tribes (§§ 224.2, subd. (f) & 224.3, subd. (a)). If the court determines ICWA does not apply, the order terminating mother's parental rights shall remain in effect. If the court determines ICWA does apply, it shall proceed in conformity with ICWA and related state law.

NOT TO BE PUBLISHED.


KIM, J.*


I concur:


EGERTON, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

LAVIN, Acting P. J., Concurring:

I concur in the judgment. I write separately to clarify that I disagree with *In re Dezi C.*'s "fourth rule: An agency's failure to discharge its statutory duty of initial inquiry is harmless unless the record contains information suggesting a reason to believe that the children at issue may be" Indian children. (*In re Dezi C.* (June 14, 2022, B317935) \_\_\_Cal.App.5th\_\_\_ [2022 Cal.App.Lexis 514, at p. *2].)

LAVIN, Acting P. J.